UNITED STATES of America, Appellee,

v.

Jack Buddy CALLISON, Appellant.

No. 77–1959.

United States Court of Appeals,
Eighth Circuit.

Submitted March 13, 1978.

Decided June 7, 1978.

Rehearing and Rehearing En Banc
Denied June 22, 1978.

Thomas M. Bradshaw, Asst. Federal Public Defender, Kansas City, Mo., argued and on brief, for appellant.

Anthony P. Nugent, Jr., Asst. U. S. Atty., Kansas City, Mo. (argued), and Ronald S. Reed, Jr., U. S. Atty., Kansas City, Mo., on brief, for appellee.

Before VAN OOSTERHOUT, Senior Circuit Judge, HENLEY, Circuit Judge, and LARSON,* Senior District Judge.

LARSON, Senior District Judge.

Appellant Jack Buddy Callison was convicted by a jury of armed bank robbery, in violation of 18 U.S.C. § 2113(d) and 18 U.S.C. § 2. The facts pertinent to this appeal follow.

On July 15, 1977, the Central Bank of Kansas City, Missouri was robbed of approximately $17,000 by two white males. On July 18, 1977, defendant was arrested alone in an automobile near Wellington, Kansas. Defendant had stopped his car by the side of the road and Trooper Keffer had stopped to assist him. Keffer ran a vehicle identification check and discovered the ve-

hicle was lost or stolen. When Keffer asked for some identification and papers on the vehicle, defendant pulled a gun; Keffer succeeded in disarming him. Defendant was taken into custody on assault charges and the car was towed to a maintenance lot in Wellington. When defendant's personal belongings were inventoried, $1,120 was found on his person.

Trooper Keffer telephoned Sergeant Price of the Kansas City police, who told Keffer defendant was wanted for investigation of a homicide. Keffer told Price that defendant had said he had $15,000 in his car, and in response to that information, Price stated that the Central Bank had been robbed of over $15,000 only a few days before. Price said only one suspect, Cecil Rhoades, had been identified.

Keffer then sought a search warrant for the car. In his supporting affidavit, Keffer stated that defendant "was suspected by the K.C.Mo. P.D. as possibly being a participant" in the robbery. The warrant was issued and during the course of the search officers found a suitcase in the car, which they pried open. They discovered approximately $16,000. Callison was held in lieu of bond on State charges, later arraigned on the Federal charges, returned to State custody for State arraignment proceedings and returned to Federal custody for the duration of his Federal trial.[1] After disposition of various preliminary motions, jury trial commenced October 31, 1977, and a verdict of guilty was returned on November 2, 1977.

The other suspect in the bank robbery, Cecil Rhoades, was found dead of a gunshot wound on July 17 or 18 near Claremore, Oklahoma. Claremore is a few hours drive from Wellington, where defendant was arrested.

I. Validity of the Warrant and Search.

■ Defendant contends that the search warrant was invalid because the statement

---

* Earl R. Larson, Senior District Judge, District of Minnesota, sitting by designation.

1. Defendant preserved for appeal the issue whether the Government violated the Interstate Agreement on Detainers and thereby lost juris-

diction of his person. As defendant now concedes, this issue is governed by *United States v. Harris*, 566 F.2d 610 (8th Cir. 1977), and the argument is without merit.

in Keffer's affidavit that Callison was "suspected" by the Kansas City police as a participant in the robbery was a material misrepresentation. Price did not actually tell Keffer defendant was a suspect; Keffer, not unreasonably, inferred it from the tenor of their conversation. We find that the statement in the affidavit was neither "intentionally or recklessly untruthful," *United States v. Marihart,* 492 F.2d 897 (8th Cir.), *cert. denied,* 419 U.S. 827, 95 S.Ct. 46, 42 L.Ed.2d 51 (1974), nor was it material. The other factual allegations in the affidavit were sufficient standing alone to establish probable cause.

■ Defendant also argues the search of the suitcase was unlawful because it went beyond the scope of the warrant, which allowed search of the car only. Defendant relies on *U. S. v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), for the proposition that each intrusion into a separate private area must be independently supported and therefore a separate warrant should have been obtained for the suitcase.

*Chadwick* involved a warrantless search of a footlocker where no exigent circumstances existed and a warrant could easily have been obtained. We find nothing in *Chadwick* to suggest that two warrants, based on the same facts, should have been obtained here to justify the search of both the car and its contents. The warrant authorized search of a particular car at a particular place for a particular item—money—and it was wholly reasonable in the execution of the warrant to search for the money in a container within the car. We conclude that the warrant and the search were valid.

## II. Objections to the Admission of Evidence.

■ Defendant contends the district court erred in admitting into evidence the revolver seized at the time of defendant's arrest because there was no testimony indicating it was the same weapon used in the robbery. The Government asserts the gun

was admissible to show intent to flee and a guilty mind, *United States v. White,* 488 F.2d 660, 662 (8th Cir. 1973), or, in the alternative, that the evidence was merely cumulative and not prejudicial. We do not find the intent to flee rationale entirely persuasive since the Government in closing argument focused not on that theory but on the gun as a direct link between defendant and the crime. And the testimony did not directly identify defendant's revolver as the same weapon used in the robbery. But there were seven eyewitnesses in or near the bank who identified defendant; several of them identified him as the robber with the gun or weapon; photographs of the robbery showed a man identified as Callison holding a gun similar to the one admitted into evidence. In these circumstances we cannot see how admission of the gun itself could possibly have influenced the jury. Assuming there was any error, we hold it was harmless.

■■ Defendant objected to the lower court's ruling that his prior conviction for bank robbery could be used to impeach him. Defendant acknowledges that the impeachment use of a prior conviction is proper, *United States v. Carter,* 528 F.2d 844, 847 (8th Cir.), *cert. denied,* 425 U.S. 961, 96 S.Ct. 1745, 48 L.Ed.2d 206 (1976), but asserts that since his prior conviction was also for bank robbery, inquiry into the exact nature of the crime should have been disallowed as too prejudicial. This contention is without merit. The matter was carefully considered by the trial court and we find no abuse of discretion in its decision to permit inquiry into the specific nature of the prior offense.[2] *Id.* at 846–47.

## III. Instructions.

Defendant objected to the trial court's refusal to give the jury his proposed cautionary instruction regarding the deceased codefendant Cecil Rhoades. Defendant's instruction would have advised the jury not to concern itself with the fact that Rhoades was not also on trial and that they were to

---

2. We note that the trial court disallowed questions relating to the fact that the previous robbery was of the same bank, at about the same time of day, nine years before.

decide only the guilt or innocence of Callison. The trial court ruled, however, that testimony as to when and where Rhoades was found would be admissible. In light of that ruling, defendant entered into a stipulation with the Government, later read to the jury, which stated that Rhoades had died on July 17 or 18 near Claremore, Oklahoma. No mention was made of the manner of death.

Defendant contends that this stipulation, as opposed to the proposed instruction, permitted the jury to speculate that defendant was somehow implicated in Rhoades' death. Callison and Rhoades were seen together shortly after the bank robbery. Rhoades' fingerprints were found in the car in which defendant was arrested, and, as noted above, Claremore was within driving distance of the place at which Callison was arrested on July 18. The Government's justification for introducing the fact, time and place of death was that the jury was entitled to know why Rhoades, against whom the eyewitness evidence was even stronger than that against Callison, was not being tried or used as a witness.

■ Details about Rhoades' death were wholly unnecessary for the Government's limited purpose of explaining Rhoades' absence. The stipulation created a danger that the jury would link defendant to the death and in light of that risk, if any explanation of Rhoades' absence was necessary at all, defendant's cautionary instruction should have been preferred. *See United States v. Vaughn,* 546 F.2d 47, 51 (5th Cir. 1977). No emphasis was placed on the stipulation, however, and no attempts were made to draw improper inferences from it. We cannot say on this record, where the evidence of guilt is so overwhelming, that refusal to give the proffered instruction and consequent use of the stipulation was harmful.

■ We find no merit in defendant's contention that the trial court erroneously instructed the jury on the inference to be drawn from possession of recently stolen property. The evidence supported the instruction and it was for the jury to decide whether defendant's explanation of his pos-session negated the inference. *United States v. Mitchell,* 558 F.2d 1332, 1336 (8th Cir. 1977); *United States v. Johnson,* 563 F.2d 936, 940–41 (8th Cir. 1977).

■ Finally, defendant urges that a lesser included offense instruction and theory of the case instruction ought to have been given. We note that a lesser included offense instruction on 18 U.S.C. § 2113(c) would have been improper under *United States v. Gaddis,* 424 U.S. 544, 547–48, 96 S.Ct. 1023, 47 L.Ed.2d 222 (1976), and that the evidence did not support a lesser included offense instruction with regard to 18 U.S.C. § 2113(a). *See United States v. Thompson,* 492 F.2d 359, 362 (8th Cir. 1974). There was no dispute in the proof on the element of assault—the Government's evidence showed that the robbery was conducted with firearms and that threats to kill were made; defendant testified he did not participate in the robbery at all. Thus there was nothing from which the jury could conclude that defendant robbed the bank but did so without committing an assault or placing lives in jeopardy. We find no error in the refusal to give these instructions on defendant's theory of the case instruction.

Affirmed.