UNITED STATES of America, Plaintiff,

v.

Alan Herbert ABRAHAMS, a/k/a James A. Carr, Defendant.

No. 79 Crim. 425 (WCC).

United States District Court,
S. D. New York.

March 7, 1980.

Robert B. Fiske, Jr., U. S. Atty. for the Southern District of New York, New York City, for the United States of America; Michael A. Collora, Sp. Asst. U. S. Atty., District of Massachusetts, Boston, Mass., of counsel.

Alan Herbert Abrahams, pro se.

F. Lee Bailey, Boston, Mass., for defendant; Anthony M. Cardinale, Boston, Mass., of counsel.

OPINION AND ORDER

CONNER, District Judge:

On January 11, 1978 Magistrate Rudolph Pierce of the District of Massachusetts issued a search warrant authorizing the seizure of the following items from the premises of Lloyd, Carr and Company ("the company"), located at 84 State Street in Boston:

"Lloyd Carr's bank statements, cash receipt books, option purchase records, sales

material distributed to customers, employee compensation records, customer account records, sales training material and customer lists."

These materials constituted most of the company's business records.

The affidavit in support of the Government's application for a search warrant alleged that the described documents were evidence of violations of the federal mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343. The affidavits of Robert Boraks, an attorney for the Commodity Futures Trading Commission and John M. Hurley, an attorney employed by the Massachusetts Division of Securities, and copies of orders and a supporting opinion in *Kelley v. Carr* by Chief Judge Noel Fox of the Western District of Michigan, were annexed to the warrant application for the purpose of establishing probable cause to believe that the company's Boston office contained evidence of a nationwide scheme to defraud investors and potential investors in London commodity futures. On that same day, agents of the Federal Bureau of Investigation ("the FBI") conducted an extremely thorough search of the company's Boston office; approximately 25 agents participated in the five-hour search.

Defendant Abrahams, who, under the name of James Carr, founded the Lloyd, Carr business, moves to suppress the items seized during the search on several grounds: (1) that there was no probable cause to issue the search warrant; (2) that the descriptions of items to be seized were so broad that the search warrant was merely a "general" warrant proscribed by the Fourth Amendment; (3) that the search warrant was executed in bad faith, (4) that a signed copy of the warrant was not presented to the company's employees during the search, and (5) that the documents found in a locked safe and locked file cabinet, which containers were removed to the FBI's offices where they were opened, should be suppressed under *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977).

■ The validity of the January 11 search warrant was recently reviewed by the First Circuit Court of Appeals in *United States v. Brien*, 617 F.2d 299 (1st Cir. 1980). The *Brien* prosecution was originally entitled *United States v. Abrahams*; however, the action against Abrahams was severed from the actions against several of the company's employees. Those employees were subsequently tried and convicted of violating the mail and wire fraud statutes. In *United States v. Brien*, the First Circuit affirmed those convictions, holding that, *inter. alia*, the January 11 search warrant was lawful. This Court agrees with the conclusions of the First Circuit, for the reasons expressed in their opinion, (1) that the affidavits and exhibits annexed to the Government's application for a search warrant justified a belief by Magistrate Pierce that there existed probable cause to believe that Lloyd, Carr & Company was engaged in a nationwide scheme to defraud investors and that the documents the Government requested authority to seize were likely to exist in the company's Boston offices and constituted evidence of the crimes then under investigation, and (2) that the descriptions of the items to be seized were adequately particularized; the executing officers would have no need to exercise their own judgment with respect to what they should seize. Thus Abrahams' motion to suppress evidence obtained during that search on grounds that no probable cause existed to issue the warrant and that the warrant failed to adequately particularize the items to be seized is denied.

■ With respect to Abrahams' third claim, the Court finds that agents did not execute the warrant in "bad faith." The executing agents received a 30–45 minute briefing prior to the search; Agent Alfred A. Buczinski and Mr. John E. DeRiedon, whose testimony I find credible, testified that they witnessed no wholesale dumping of papers. Agent Buczinski further testified that he attempted to follow the confines of the search warrant, though he was hindered from conducting an orderly search by the lack of cooperation, and at times even harassment, from the company's employees.

■ With respect to Abrahams' fourth claim, the Court rejects defendant's contention that the failure of the executing agents to present a representative of the company with a *signed* copy of the warrant requires suppression. There is no dispute on the pivotal issue; Magistrate Pierce signed the warrant prior to the time it was executed. Furthermore, the unsigned copy of the warrant that the agents presented to the company's employees listed the identical items to be seized which were listed on the signed warrant, although the unsigned copy did not contain a sentence that was added to the warrant prior to the time that it was signed—that the delineated items were "evidence of and instrumentalities of a scheme and artifice to defraud . . . in violation of 18 U.S.C. 1341 and 1343." "Absent a showing of prejudice, irregularities in [ministerial] procedures do not void an otherwise valid search." *United States v. McKenzie*, 446 F.2d 949, 954 (6th Cir. 1971). See also *United States v. Cafero*, 473 F.2d 489, 499 (3d Cir. 1973), *cert. denied*, 417 U.S. 918, 94 S.Ct. 2622, 41 L.Ed.2d 223 (1974); *Martin v. United States*, 341 F.2d 576 (5th Cir. 1965). Abrahams has made no claim of prejudice as a result of the agent's failure to deliver a signed copy of the warrant. Abrahams' motion to suppress on this ground is denied.

■ Finally Abrahams moves to suppress documents removed from a locked safe and locked file cabinet, arguing that *Chadwick* requires that the Government should have obtained a *second* search warrant prior to unlocking these containers at the FBI's offices. I find that *Chadwick* is inapplicable to the facts of this case and that a second search warrant was not required.

Agent Buczinski testified at the suppression hearing that during the course of the search, he came across a locked safe and filing cabinet; that he was told that the filing cabinet contained materials similar to those in an adjacent filing cabinet which housed documents the agents were authorized to seize, that he attempted to gain access to the safe at the company's offices but was unable to do so; and that he removed the two containers to the FBI's offices where he opened them. The safe contained several personal items belonging to defendant as well as 50 option contracts for customers; the filing cabinet contained items within the bounds of the search warrant.[1] At trial, the Government intends to introduce into evidence only some of the option contracts that were found in the safe; those documents fall within the range of items that could be seized pursuant to the search warrant, *i. e.*, customers account records.[2]

In *Chadwick*, the Supreme Court held unconstitutional the *warrantless* search of a locked foot locker that had been removed by federal agents from the trunk of a taxicab and then taken to the federal building before it was searched. The Court held that where there is no exigency which requires that an immediate search be conducted, a warrant must be obtained prior to searching personal property.

However, in this case the authorities obtained a warrant to search Lloyd, Carr & Company's offices. Abrahams does not allege that if they had been able to unlock the safe and filing cabinet in the company's offices they would not have been authorized to examine their contents. Indeed, such an argument would be without merit. "A warrant to search a private home or office for specific objects might reasonably comprehend within its scope household items, containers, and personal accessories." *United States v. Micheli*, 487 F.2d 429 (1st Cir. 1973). See also *Zurcher v. Standford Daily*, 436 U.S. 547, 570, 573 n.7, 98 S.Ct. 1970, 1985 n.7, 56 L.Ed.2d 525 (1978) (Stewart, J. dissenting) ("[I]n order to find a particular document . . . the police

---

1. Those items found in the safe and cabinet that were not within the confines of the warrant were returned, ultimately to the trustee; those items that were within the bounds of the warrant were retained by the authorities.

2. Thus, this case differs from the situation where the authorities are required to obtain a second warrant before they seize items which they find during a search but which they are not authorized to seize pursuant to the first search warrant. See, *e. g., United States v. Dzialak*, 441 F.2d 212, 216–217 (2d Cir. 1971).

will have to search every place where it might be—including presumably, every file in the office . . . ."); *United States v. Teller,* 397 F.2d 494 (7th Cir.), cert. denied, 393 U.S. 937, 89 S.Ct. 299, 21 L.Ed.2d 273 (1968). *Cf. United States v. Canestri,* 518 F.2d 269 (2d Cir. 1975) (locked storeroom searched); *United States v. Acree,* 450 F.Supp. 734 (W.D.Okl.1976) (locked cabinets opened by locksmith during search). The locked containers were on the premises that the officers were authorized to search and it was reasonable for them to search the safe and filing cabinet for the documents listed on the warrant. See *United States v. Callison,* 577 F.2d 53 (8th Cir.), cert. denied, 439 U.S. 873, 99 S.Ct. 209, 58 L.Ed.2d 187 (1978) (Where authorities had search warrant for a car, they did not need second search warrant to search a locked suitcase they found in the car. "We find nothing in *Chadwick* to suggest that two warrants, based on the same facts, should have been obtained here to justify the search of both the car and its contents. The warrant authorized search of a particular car at a particular place for a particular item—money—and it was wholly reasonable in the execution of the warrant to search for the money in a container within the car.") "It is not the breaking of his doors, and the rummaging of his drawers, that constitutes the essence of the offence; but it is the invasion of his indefeasible right to personal security, personal liberty, and private property." *Boyd v. United States,* 116 U.S. 616, 630, 6 S.Ct. 524, 532, 29 L.Ed. 746 (1886). Here, Abrahams' privacy was lawfully invaded by the search of the premises pursuant to a warrant issued by a neutral magistrate.

Moreover, the agents acted in a reasonable manner when they removed the locked containers[3] to the FBI offices and opened them there. The agents were having trouble searching even open cabinets because of the obstructive conduct of some of the company's employees. In light of this, it was not unreasonable for them to decide against

trying to pry open the safe and filing cabinet in the company's offices. The Fourth Amendment requires that a search of private property be both reasonable and performed pursuant to a properly issued search warrant. *United States v. Dien,* 609 F.2d 1038, 1044 (2d Cir. 1979). The search of the Lloyd, Carr & Company offices was conducted with the safeguards a judicial warrant provides and in a reasonable manner.

Defendant's motion to suppress the contracts found in the safe is denied.

*Summary*

Abrahams' motion to suppress the items seized from the company's offices pursuant to a search warrant issued on January 11, 1978 is denied in all respects.

SO ORDERED.

---

**3.** Note that if Abrahams' challenge is to the *removal* of the locked safe and file cabinet, that removal is clearly justified under an exigent circumstance rationale in light of the obstruc-

tion to the search and harassment of the searching officers by Lloyd, Carr personnel. See *Chadwick, supra.*