UNITED STATES of America, Plaintiff,

v.

Thomas GAERTNER, Defendant.

No. 81–CR–82.

United States District Court,
E. D. Wisconsin.

July 27, 1981.

Lawrence O. Anderson, Patricia J. Gorence, Asst. U. S. Attys., Milwaukee, Wis., for plaintiff.

Nikola Kostich, Styler, Kostich & Weber, Robert LeBell, Atty. at Law, Milwaukee, Wis., for defendant.

## MEMORANDUM AND ORDER

WARREN, District Judge.

On May 26, 1981, the grand jury returned a one-count indictment charging defendant Thomas Gaertner with knowingly, intentionally and unlawfully possessing with intent to distribute cocaine, a Schedule II Narcotic Drug Controlled Substance, in violation of Title 21, Section 841(a)(1) of the United States Code.

Currently before the Court are eleven motions filed by the defendant and one motion filed by the Government. These motions are the subject of this memorandum and order.

## I. MOTION FOR RECUSAL

The first motion the Court will resolve is defendant's motion for recusal. Pursuant to 28 U.S.C. §§ 144, 455(b)(1) and 455(a), defendant seeks an order disqualifying this Court from presiding over this matter on the grounds of personal prejudice and bias and/or the appearance of personal prejudice and bias. The motion is based on the affidavit of defendant's attorney, Robert LeBell, the unsigned statement of the defendant, and the files and records in the Eastern District of Wisconsin cases 76–CR–204 and 81–CR–82.

■ The Government opposes the motion. Because all statements allegedly showing the Court's prejudice were made by this Court in the course of judicial proceedings, it argues that the defendant's affidavit does not state grounds that mandate recusal. It contends that both 28 U.S.C. §§ 144 and 455(b)(1) require that personal prejudice be shown in an affidavit, and that a showing of judicial bias is not sufficient.

Section 144 provides:

Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a *personal bias* or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith. (emphasis added).

Section 455 provides in relevant part:

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a *personal bias* or prejudice concerning a party ... (emphasis added).

Defendant's contention that this Court harbors a personal bias against him is simply not true. This Court's only contact with the defendant took place in a prior criminal proceeding which occurred nearly four years ago. Because this action is completely unrelated to the earlier proceeding, the Court approaches it on its own merits without any preconceived notions as to how the jury should decide defendant's fate. Furthermore, any "derogatory" statements made to defendant during his sentencing were not the result of any personal bias, but rather a reaction to the events which the Government proved defendant committed. It is a rare occurrence when this Court, or any other Court, flatters a defendant for his criminal actions. Finally, to allow a defendant to obtain a new judge simply because he has appeared previously before that judge would reek havoc on the administration of justice. Sections 144 and 455(b)(1) are not intended to serve this purpose. Accordingly, defendant's motion for recusal pursuant to sections 144 and 455(b)(1) must be and is hereby denied.

Although defendant did not move for recusal under 28 U.S.C. § 455(a) in his original motion for recusal, he argues in his reply memorandum that recusal under that section is also appropriate.

Section 455(a) states:

Any justice, judge or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

The Court has already indicated that it entertains no preconceived notions concerning this case. That defendant has previously appeared before it does not alter the Court's duty to seek the truth through the factfinding process. Moreover, the Court simply cannot accept defendant's contention that its impartiality may reasonably be questioned because defendant appeared before this Court nearly four years ago. Accordingly, defendant's motion for recusal pursuant to section 455(a) is also denied.

## II. MOTION TO REDUCE BAIL

At defendant's arraignment, Magistrate Goodstein fixed bail in the amount of $75,000.00 cash. Defendant contends this amount is excessive under the Eighth Amendment, and therefore should be reduced. Defendant has not, however, filed a supporting memorandum to substantiate his motion.

Fixing the amount of bail is peculiarly a matter of discretion with the trial court. *United States v. Wright*, 483 F.2d 1068 (4th Cir. 1973). Given the nature of the alleged offense, the Court is of the opinion that the bail set by the Magistrate is just. Accordingly, defendant's motion for reduction of bail is denied.

## III. MOTION FOR CHANGE OF VENUE

Defendant's motion for a change of venue is based on his contention that prejudicial pretrial publicity makes it impossible for him to receive a fair trial in this Court. The publicity surrounding this case, if any, has been minimal and the Court can see no prejudice to defendant in being tried in Milwaukee. Therefore, defendant's motion for a change of venue is hereby denied.

## IV. MOTION TO SUPPRESS

Defendant seeks an order suppressing for use as evidence at trial any and all articles seized by any law enforcement agent in connection with this action. Defendant sets forth seven grounds in support of his motion. First, he contends the search warrant issued by Magistrate Goodstein on May 19, 1981 is facially overbroad and lacks the necessary specificity required by the Fourth Amendment. Second he maintains that the affidavit upon which the search warrant was based contains intentional material misrepresentations. Third, he contends that the affidavit is based upon statements of a confidential informant whose reliability is not shown within the four corners of the affidavit. Fourth, he argues that the confidential informant was in fact unrelia-

ble and that the failure to bring this fact to the Magistrate's attention resulted in a deliberate misrepresentation. Fifth, he states that there is no showing of the source of information of material allegations contained in the affidavit and, in absence of such demonstration, the affidavit is rendered invalid and cannot support the search warrant as issued. Sixth, he argues that the search itself went beyond the scope of the search warrant and did not permit or authorize the search of any satchel or bag within the automobile. Finally, defendant maintains no probable cause existed for arrest because unreliable information of the confidential informant led to his arrest. After reviewing the search warrant and the affidavit upon which the warrant is based, the Court will address each of defendant's contentions.

The search warrant, which Magistrate Goodstein issued on May 19, 1981, permitted federal agents to search defendant's 1974 Oldsmobile for:

> Cocaine, a Schedule II Narcotic Controlled Substance and fruits, instrumentalities and evidence being used in connection with a violation of a criminal offense, to wit: a violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

The Magistrate issued the search warrant after reviewing the affidavit of Michael P. Ebert, Special Agent for the Drug Enforcement Administration (DEA). In his affidavit, Agent Ebert avers, in substance, the following: at about 12:10 P.M. on May 19, 1981, he observed the defendant drive into the parking lot on the southwest corner of Van Buren and Juneau Streets in the City of Milwaukee. The defendant parked his car and walked toward the Big Boy Restaurant located adjacent to the parking lot. A few minutes later, Agent Ebert observed a 1969 Chevrolet 4-door sedan drive into the parking lot; the driver of the Chevrolet remained in his vehicle.

A few minutes later, Agent Ebert observed the defendant and a confidential informant for the DEA walk out of the Big Boy Restaurant and walk toward the Chev-rolet. Agent Ebert then observed the driver of the Chevrolet get out of the vehicle, go to the trunk of the car, open the trunk and remove from the trunk a brown satchel approximately 18 to 20 inches long and 6 to 9 inches wide. Agent Ebert then observed the driver of the Chevrolet walk back toward the passenger area of the car. Then the confidential informant left the Chevrolet and walked toward the Big Boy Restaurant.

Shortly thereafter, Agent Ebert observed the defendant leave the Chevrolet and return to his Oldsmobile carrying the brown satchel. He then saw the defendant put the satchel in the trunk of the Oldsmobile and drive the car toward the area where the Chevrolet was parked. It was at this time that he was given the signal to effectuate the arrest of defendant.

The person who gave the signal to Agent Ebert to arrest the defendant was Special Agent Brian Maas of the DEA. Agent Ebert states in his affidavit that Agent Maas arrived at the Big Boy Restaurant at approximately 11:45 A.M. May 19, 1981 in the company of the confidential informant. Agent Maas met with defendant inside the Big Boy at about 12:10 P.M. on May 19, 1981 and asked defendant about purchasing approximately eight ounces of cocaine. According to Agent Ebert, this purchase had been discussed prior to this meeting with the defendant.

Agent Ebert further states that the defendant advised Agent Maas that the confidential informant could go along with him to inspect the cocaine which was the subject of their transaction. Agent Maas then stated that the confidential informant left his presence and returned a few minutes later and stated to Agent Maas that he, the informant, saw at least eight ounces of cocaine out in the parking lot. It was at this time that Agent Maas gave the signal to Agent Ebert to effectuate the arrest.

As his first ground for suppression, defendant contends that the warrant issued by Magistrate Goodstein was a general warrant. Because the warrant allowed the federal agents to search for "instrumentalities

and evidence being used in connection with a violation of a criminal offense, to wit: a violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2," defendant argues it permitted a "fishing expedition." Defendant maintains that from its very nature and wording, the search warrant provided for the seizure of almost any physical object falling within the subjective belief of the officer to be evidence. Consequently, he contends that the warrant is violative of the Fourth Amendment requirement that a warrant must describe "things to be seized with precision." *Stanford v. Texas*, 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965); *Trupiano v. United States*, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663 (1948).

■ The Court does not agree that the warrant was so overbroad so as to constitute a general warrant. The warrant authorized only the search for and seizure of evidence relating to the crime of possession or distribution of cocaine under section 841(a)(1). Given the statements contained in Agent Ebert's affidavit, the Court finds the language of the search warrant sufficiently precise so as not to make it a general warrant.

■ Defendant's second ground for suppression is his contention that Agent Ebert's application for a search warrant contains misrepresentations of material facts. It is defendant's position that no conversation ever took place between the defendant and Agent Maas. He maintains that, in the absence of any such conversation, the establishment of probable cause would have been impossible. Relying on *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), *United States v. Cortina*, 630 F.2d 1207 (7th Cir. 1980), and *United States v. Carmichael*, 489 F.2d 983 (7th Cir. 1973), defendant requests an evidentiary hearing to resolve this motion.

In *Franks*, the Supreme Court set out the prerequisites for obtaining an evidentiary hearing such as the one defendant seeks:

The defendant's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. *Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.* *Id.*, 438 U.S. at 171, 98 S.Ct. at 2684. (emphasis added).

The Supreme Court's decision in *Franks* does not stand for the proposition that a Court must order an evidentiary hearing whenever a defendant wishes to challenge statements contained in an affidavit which forms the basis for a search warrant. Rather, the decision directs trial courts to conduct such a hearing only when a defendant alleges deliberate falsehood or reckless disregard of the truth and substantiates his allegations with an offer of proof. In *Cortina*, the Seventh Circuit held a *Franks'* type hearing is required "where the defendant makes a *substantial preliminary showing* of falsity . . ." (emphasis added).

In the case at bar, the only basis for defendant's contention that the affidavit contained material misrepresentations are the affidavits filed by defendant's attorney, Robert LeBell. In his first affidavit, Mr. LeBell states, upon information and belief, that "no conversation took place between the defendant and Agent Maas at any time with respect to the issue of cocaine or any other subject." (LeBell Affidavit, p. 1). No affidavit of the defendant, statement of witnesses or other offer of proof accompanies this first affidavit.

In his second affidavit, Mr. LeBell states, again upon information and belief, that it is defendant's intention to testify at an evidentiary hearing that he had no conversation with Agent Maas regarding the subject of cocaine on either May 18 or May 19. Mr. LeBell further states that there are other witnesses who can testify that the defendant did not have a conversation with Agent

Maas regarding the subject of cocaine on either May 18 or May 19. Mr. LeBell states that he intends to produce these witnesses at the evidentiary hearing. Finally, Mr. LeBell states that Ted Welch gave defendant a polygraph exam which shows that defendant is truthful when he says he had no conversations with Agent Maas on May 18 or May 19 concerning cocaine.

The Court has carefully reviewed Mr. LeBell's two affidavits in light of the *Franks* and *Cortina* decisions. Based on that review, the Court is of the opinion that the defendant has failed to make a substantial showing that the affidavit contains material misrepresentations. Far from providing the Court with sworn statements of witnesses who can attest to the falsity of Agent Maas's statements, Mr. LeBell's affidavits do not even identify his witnesses, nor explain how these witnesses would know of all conversations engaged in by defendant on May 18 and May 19. Consequently, the Court places no weight on Mr. LeBell's statements regarding these "witnesses." Mr. LeBell's belief that his client did not engage in conversations with Agent Maas is also insufficient to warrant a *Franks*-type evidentiary hearing. Mr. LeBell's statement of belief amounts to nothing more than a conclusory attack upon the affidavit. Finally, the Court is not of the opinion that the results of a polygraph examination alone should entitle a defendant to a *Franks*-type hearing. Accordingly, the Court denies defendant's request for an evidentiary hearing on this matter and rejects defendant's contention that the affidavit contains misrepresentations of material fact.

■ With regard to defendant's third ground for suppression, the Court agrees with the defendant that Agent Ebert made no attempt to show that his confidential informant was reliable. Nevertheless, the Court rejects defendant's contention that the omission renders the search warrant invalid. It is the Court's opinion that probable cause to believe defendant had cocaine in his car was established when the defendant advised Agent Maas that the confiden-

tial informant could go along with him to inspect the cocaine. Because the confidential informant's affirmative actions of checking the cocaine and reporting back to Agent Maas occurred after probable cause existed, the Court finds that the omission of information establishing the confidential informant's reliability is not fatal to the warrant.

Having held that the information supplied by the confidential informant was not needed to establish probable cause, the Court need not address defendant's contentions that the confidential informant was unreliable and that the use of his information misled the Magistrate. Accordingly, the Court rejects the defendant's fourth and seventh contentions.

■ Defendant's fifth ground for suppression—that there was no showing of the source of information of the material allegations in the affidavit—is also without merit. It is clear upon a reading of the affidavit that the information contained in the affidavit emanates from three sources: Agent Ebert, Agent Maas and the confidential informant. It is also clear which information each of these sources supplied. Therefore, the Court rejects defendant's fifth ground for suppression.

■ Finally, the Court must also reject defendant's contention that a separate search warrant was needed to search the contents of the satchel. In support of this contention defendant relies on *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977) and *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979).

The Government maintains that defendant's reliance on *Chadwick* and *Sanders* is misplaced because both those cases dealt with warrantless searches. In attacking defendant's reliance on *Chadwick*, the Government directs the Court's attention to *United States v. Callison*, 577 F.2d 53 (8th Cir. 1978), where the Eighth Circuit rejected an argument nearly identical to defendant's argument:

*Chadwick* involved a warrantless search of a footlocker where no exigent circumstances existed and a warrant could easily have been obtained. We find nothing in *Chadwick* to suggest that two warrants, based on the same facts, should have been obtained here to justify the search of both the car and its contents. The warrant authorized search of a particular car at a particular place for a particular item—money—and it was wholly reasonable in the execution of the warrant to search for the money in a container within the car. We conclude that the warrant and the search were valid. *Id.* at 55.

The reasoning in *Callison* applies with equal force to the case at bar. Like the search warrant in *Callison*, the search warrant here authorized the search of a particular car for particular items. Consequently, it was wholly reasonable in the execution of the warrant to search for the cocaine in the satchel in the car. Accordingly, the Court rejects defendant's contention that a second search warrant was needed to search the satchel.

Based on the foregoing, the Court concludes that the warrant issued by the Magistrate was valid. Therefore, defendant's motion to suppress the evidence obtained in the search of his 1974 Oldsmobile is hereby denied.

## V. MOTION TO DISMISS

Defendant has filed four motions to dismiss. The Court will address each of these motions.

### A. *Warrantless Arrest*

■ In his first motion to dismiss, defendant argues his stop and arrest were contrary to the Fourth, Fifth and Fourteenth Amendments to the United States Constitution. He contends the stop and arrest were effectuated without a warrant, exigent circumstances or other authority known to law. Defendant also argues that the arrest and stop were invalid because they were, in part, based upon a tip given by an unreliable informant.

The Court has previously rejected defendant's contention that the information provided by the confidential informant was necessary to establish probable cause. Therefore, it need not address this argument again here.

The Court also rejects defendant's contention that no exigent circumstances justified his stop and arrest. Defendant is charged with possession with intent to distribute four ounces of cocaine. The charge is based on those activities which occurred at the Big Boy Restaurant on May 19, 1981. Had the federal agents obtained an arrest warrant prior to arresting defendant, defendant and the seized cocaine would have most likely been long gone. Under these circumstances, the Court finds exigent circumstances permitted defendant's arrest without a warrant. Accordingly, defendant's first motion for dismissal is hereby denied.

### B. *Indictment Based on Hearsay*

■ Defendant contends dismissal of the indictment is necessary because the majority of the testimony presented to the grand jury was of a hearsay nature. He contends that the Government's reliance on the hearsay testimony is fatal to the indictment because better evidence was readily available for presentation to the grand jury. In support of his argument, he relies primarily on *United States v. Arcuri*, 282 F.Supp. 347 (E.D.N.Y.1968), in which Judge Weinstein stated that "a timely motion to dismiss . . . will be granted without a showing of prejudice to the defendant if it is clear that hearsay alone was deliberately relied upon when better evidence was readily available for the presentation to the grand jury." *Id.* at 351.

*Arcuri* involved a situation in which the defendants were convicted of passing counterfeit money largely upon the testimony of special agents of the Treasury Department who were on the scene when the defendants passed a large number of counterfeit bills. Although more than a half-dozen special agents participated in the investigation and arrest, a government agent without any direct knowledge of the events was the only

witness who testified before the grand jury. In his testimony before the grand jury, he synthesized the reports of those agents who had observed the relevant events. He spoke as would one who had seen the events he described and a grand jury would not have known that the witness' knowledge was second-hand.

In criticizing this practice, Judge Weinstein set forth the two major problems arising from the exclusive use of hearsay evidence when better evidence is available:

> First, it habituates the grand jury to rely upon "evidence" which appears smooth, well integrated and consistent in all respects. Particularly because neither cross-examinations nor defense witnesses are available to them, grand jurors do not hear cases with the rough edges that result from the often halting, inconsistent and incomplete testimony of honest observers of events. Thus, they are unable to distinguish between prosecutions which are strong and those which are relatively weak. All cases are presented in an equally homogenized form. A grand jury so conditioned is unable to adequately serve its function as a screening agency. It cannot exercise its judgment in refusing to indict in weak cases where, technically, a prima facie case may have been made out. It is, moreover, unlikely to demand additional evidence.

> The second reason the practice is undesirable is that it prevents the defendant from utilizing grand jury testimony in cross-examining witnesses who will testify at trial. Since no witness the government intends to use is called before the grand jury, it avails a defendant little to have the grand jury testimony furnished to him at the trial. *Id.* at 350.

The Government argues that the hearsay problem referred to in *Arcuri* is not present in the case at bar because Special Agent John Walsh, the DEA official who testified before the grand jury, testified from both direct knowledge and information obtained from others. It contends that the grand jury could not have confused the information Agent Walsh obtained from others with his first-hand information because he specifically stated in his testimony at what points that testimony was based on second-hand information.

The Court has reviewed Agent Walsh's testimony before the grand jury. Although the Court does not agree with the Government that Agent Walsh *specifically* stated which parts of his testimony were based upon second-hand information, the Court is of the opinion that the grand jurors would have been able to distinguish his first-hand information from that he obtained from others. Moreover, because Agent Walsh was at the scene of the arrest himself, the Court is of the opinion that his connection to the incidents which formed the basis for the indictment was strong enough to overcome the dangers discussed by Judge Weinstein.

Because Agent Walsh's hearsay testimony did not mislead the grand jurors, the Court can see no reason to depart from the generally accepted proposition that indictments based on hearsay are proper. *Costello v. United States*, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1955); *United States v. Annerino*, 495 F.2d 1159 (7th Cir. 1974). Accordingly, defendant's second motion for dismissal is hereby denied.

### C. *Statutory Classification of Cocaine*

In his final two motions to dismiss, defendant challenges the statutory classification of cocaine as a narcotic drug. In his third motion to dismiss, he argues that the classification of cocaine as a narcotic drug is arbitrary and therefore unconstitutional because cocaine is not a narcotic drug in the context of opiates and other Schedule II controlled substances. He also argues that the penalty allowed for the possession of cocaine is so severe that it constitutes cruel and inhuman punishment. In his fourth motion to dismiss, defendant argues that the Attorney General has abused his discretion in failing to reclassify the substance as a non-narcotic drug. Both motions are without merit.

■ With respect to defendant's constitutional claims, this Court concurs with the decision of numerous other federal courts that the classification of cocaine as a narcotic drug under Schedule II of 21 U.S.C. § 812 has a rational basis and is not a constitutional violation. *United States v. Stieren*, 608 F.2d 1135 (8th Cir. 1979); *United States v. Vila*, 599 F.2d 21, 25 (2d Cir. 1979); *Canal Zone v. Davis*, 592 F.2d 887, 890 (5th Cir. 1979); *United States v. Szycher*, 585 F.2d 443, 444–445 (10th Cir. 1978); *United States v. Wheaton*, 557 F.2d 275, 277 (1st Cir. 1977); *United States v. Marshall*, 532 F.2d 1279, 1287–88 (9th Cir. 1976). The Court also rejects defendant's contention that the penalty for possession with intent to distribute cocaine constitutes a violation of the Eighth Amendment. It is this Court's opinion that the penalties set for a violation of section 841 are not excessive. Accordingly, defendant's third motion to dismiss is denied.

■ Turning to defendant's contention that the Attorney General has abused his discretion by not reclassifying cocaine, the Court agrees with the Government that the proper method to argue for reclassification of cocaine is through a petition to the Attorney General. Moreover, having held that the legislative classification is not irrational, the Court is of the opinion that the Attorney General's decision not to reclassify the drug is rational and therefore not an abuse of discretion. Accordingly, defendant's fourth motion to dismiss is hereby denied.

## VI. DEFENDANT'S DISCOVERY MOTIONS

■ The Court has reviewed defendant's two discovery motions and the Government's response to those motions. Based on that review, the Court is of the opinion that defendant's requests, with the exceptions of some matters contained in paragraphs 4(a) and (b) of defendant's second discovery request, have been complied with. Therefore, all portions of defendant's motions for discovery, with the exception of the materials requested in paragraphs 4(a) and (b) of defendant's second discovery request, are hereby denied as moot.

In paragraphs 4(a) and (b), defendant seeks the following:

4. All reports and results of scientific tests or experiments performed by agents or employees of the United States government which purportedly identify any of the substances which are charged in this case as controlled substances. Specifically, and without limitation, defendant seeks the following:

a. All spectrophotometric data on any samples which form the basis of this prosecution.

b. All spectrophotometric data on any standards which were compared with the spectrophotometric data obtained from samples in this case and upon which any opinions of government analysts were based.

In its response to defendant's request, the Government states it has requested the work sheets and data of the chemist, Mr. Skowronski, in this matter and will supply the data requested in paragraphs 4(a) and (b). The Government has declined, however, to furnish results of tests performed by Mr. Skowronski in other cases on the grounds that they are not material, nor within the ambit of Rule 16(a)(1)(D) of the Federal Rules of Criminal Procedure. It states that Mr. Skowronski has analyzed approximately 2,500 drug samples in his career and argues that those samples are immaterial to this case.

The Court agrees. Because defendant has not set forth reasons showing why the results of tests from other cases are material to this action, the Court is of the opinion that those results are not material to this action. Accordingly, defendant's request for the unsupplied documents in paragraphs 4(a) and (b) of his second discovery motion is hereby denied.

## VII. GOVERNMENT'S DISCOVERY REQUEST

■ Pursuant to Rule 16(b)(1)(A) of the Federal Rules of Criminal Procedure, the

Government seeks discovery of the documents and tangible objects defendant intends to introduce as evidence in chief at the trial. Defendant opposes the motion on the grounds that the Government has not supplied him with the materials requested in paragraphs 4(a) and (b) of his second discovery request, and that the request is not sufficiently specific.

The Court has already ruled that the Government need not supply defendant with Mr. Skowronski's reports from other cases. Therefore, the only question remaining is whether the Government's request is sufficiently specific.

Although the Government does not specifically identify the items it seeks, the Court is of the opinion that the language of rule 16(b)(1)(A) is sufficiently specific to inform defendant of the documents the Government seeks. Accordingly, the Government's request for discovery pursuant to Rule 16(b)(1)(A) is of the Federal Rules of Criminal Procedure must be and is hereby granted.

## VIII. EVIDENTIARY HEARING

In light of the foregoing resolution of defendant's motions, the Court also denies defendant's motion for an evidentiary hearing.

## IX. SUMMARY

In summary, it is ordered that defendant's motions to dismiss, motion to suppress, motion for recusal, motion for reduction of bail, motion for change of venue, motions for discovery and motion for an evidentiary hearing be and hereby are denied. It is further ordered that the Government's motion for discovery be and hereby is granted.